RENDERED:  JUNE 18, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0196-MR

TAHJEE WINTERS                                                  APPELLANT

v.        APPEAL FROM FAYETTE CIRCUIT COURT
          HONORABLE LUCY ANNE VANMETER, JUDGE
          ACTION NO. 16-CR-01078-002

COMMONWEALTH OF KENTUCKY                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE:  Tahjee Winters ("Winters"), *pro se*, appeals the denial by the

Fayette Circuit Court of his Kentucky Rule of Criminal Procedure ("RCr") 11.42

motion without an evidentiary hearing.  Having reviewed the briefs, the record, and

the judgment below, we affirm.

# I. BACKGROUND

The Kentucky Supreme Court recounted the facts of this case in its unpublished opinion stemming from Winters' direct appeal:

[A] string of five robberies occurred in Lexington between September 7, 2016 and September 17, 2016. The first involved a residential home and four victims, two parents and two children. A Toyota Camry was stolen from the home and later recovered with a .40S&W caliber round discovered in the car. One of the victims, Nakia Talbert, positively identified Winters and his co-defendant, Deverious Jones, as two of the three assailants. The second and third robberies occurred on September 8 and 13, respectively, involving a total of seven victims. Both involved different Hibbett Sports stores. The final two robberies occurred on September 17 and involved Shell and Marathon gas stations just minutes apart from one another, with a total of four victims. The Marathon robbery culminated in the shooting of an employee, Charles Moore. He was shot five times and is permanently paralyzed from the waist down. Shells recovered from the scene prove the calibers of the weapons used were .9mm and .40S&W.

Winters and his co-defendant were eventually arrested. Jones was arrested on September 22, 2016 in Lexington in possession of a .9mm Smith and Wesson. Winters was arrested four days later in Bowling Green in possession of a .40 Smith and Wesson with an extended magazine. While testing could not conclusively prove Winters' gun was used in the Marathon shooting, neither did it exclude it. Testing did confirm the .9mm of Jones' was used in the shooting.

Both men were indicted in a single indictment for the robberies except for the Hibbett Stores; only Jones was charged with those robberies, a total of seven charges. Thus, of fifteen total charges, Winters was

charged with six first-degree robberies, one first-degree assault, and one first-degree burglary. Jones faced those charges as well, plus seven additional first-degree robbery charges.

*Winters v. Commonwealth*, No. 2020-SC-0238-MR, 2022 WL 574976, at *1 (Ky. Feb. 24, 2022) (unpublished).

Following a seven-day trial, a jury convicted Winters of one count of robbery in the first degree, five counts of complicity to robbery in the first degree, one count of burglary in the first degree, and one count of assault in the first degree. *Id.* The trial court followed the jury's sentencing recommendation and sentenced Winters to an aggregate sentence of 28 years' imprisonment. *Id.*

After our Supreme Court affirmed Winters' conviction and sentence on direct appeal, Winters filed his RCr 11.42 motion and memorandum alleging ineffective assistance of trial counsel on May 24, 2023. The Commonwealth filed its response on August 4, 2023. On November 7, 2023, the circuit court denied Winters' motion without an evidentiary hearing, concluding that his ineffective assistance of counsel claims could be resolved on the face of the record. Winters filed a timely appeal.

## II. ANALYSIS

On appeal, Winters argues that he is entitled to relief under RCr 11.42 due to his trial counsel's ineffectiveness in (1) failing to retain an expert witness to testify about eyewitness identification; (2) failing to object to introduction of the

-3-

photographic lineup connected with the Hibbett Stores robberies; (3) failing to move for a directed verdict on the charge of first-degree assault; and (4) failing to challenge the sufficiency of the evidence supporting the first-degree assault in the jury instructions. Finally, Winters argues that he was entitled to an evidentiary hearing.

### A. Standard of Review

Claims of ineffective assistance of counsel are reviewed under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by our Supreme Court in *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985). Both prongs must be satisfied to merit relief. *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (citing *Strickland*, 466 U.S. at 687). "Under the *Strickland* framework, an appellant must first show that counsel's performance was deficient. A 'deficient performance' contains errors 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The second prong requires an appellant to "show that counsel's deficient performance prejudiced his defense at trial. 'This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687) (citations

omitted).  To show actual prejudice, the appellant must establish a "reasonable probability" that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (citing *Bowling v. Commonwealth*, 981 S.W.2d 545, 551 (Ky. 1998)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* (quoting *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014)).

Defendants attempting to satisfy the *Strickland* standard face no small hurdle.  "When faced with an ineffective assistance of counsel claim in an RCr 11.42 appeal, a reviewing court first presumes that counsel's performance was reasonable."  *McGorman*, 489 S.W.3d at 736 (citing *Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky. 2007)).  To determine whether this presumption of reasonableness can be overcome, we consider counsel's overall performance and the totality of circumstances.  *Id.* (citing *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009)). We review counsel's performance under the *de novo* standard.  *Id.*

Additionally, not every claim of ineffective assistance merits an evidentiary hearing.  *Stanford v. Commonwealth*, 854 S.W.2d 742, 743 (Ky. 1993).  The law on this issue is clear: the circuit court need only conduct an evidentiary

hearing if (i) the movant establishes that the error, if true, entitles him or her to relief under RCr 11.42; and (ii) the motion raises an issue of fact that "cannot be determined on the face of the record." *Parrish v. Commonwealth*, 272 S.W.3d 161, 166 (Ky. 2008). In other words, "an evidentiary hearing is not required when the record refutes the claim of error or when the allegations, even if true, would not be sufficient to invalidate the conviction." *Cawl v. Commonwealth*, 423 S.W.3d 214, 218 (Ky. 2014).

When the record fails either to prove or to refute a material issue of fact, a hearing is required. "The trial judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452-53 (Ky. 2001). "The hearing ensures a defendant the protections of due process in securing his right to effective assistance of trial counsel. To that end, he is permitted to call witnesses and present evidence in support of his motion, to cross-examine the witnesses for the Commonwealth, and to be represented by counsel." *Knuckles v. Commonwealth*, 421 S.W.3d 399, 401 (Ky. App. 2014).

**B. Trial Counsel's Failure to Retain an Eyewitness Identification Expert**

Winters first contends that his trial counsel was ineffective for failing to retain an expert to testify at trial about the unreliability of eyewitness identification. This expert testimony, according to Winters, could have discredited

the testimony of Nakia Talbert ("Talbert"), a victim from the first robbery who identified Winters and his co-defendant as suspects. Both Winters and the trial court noted counsel's attempt to suppress the identification pretrial and to attack Talbert's credibility by cross examination at trial. Winters, however, asserts that the proper strategy after the unsuccessful suppression motion was to retain an expert witness for trial instead of merely relying on cross examination. To this end, Winters draws from federal and state caselaw to argue that an expert was necessary to educate the jury on how perception and memory are vulnerable to factors, such as the passage of time and discovery of post-event information. Winters argues that such an education would have enabled jurors to properly assess Talbert's confidence in her identification and prevented them from attributing undue weight to her testimony.

Regarding the performance prong of *Strickland*, the trial court found the decision to forgo presentation of expert testimony to be one of trial strategy and Winters failed to demonstrate how that decision fell "outside the normal bounds of professional norms." The court noted that Winters only established the admissibility of such testimony and that "[s]howing the permissibility of an alternative strategy on its own does not overcome the strong presumption of efficacy granted to normal trial strategy."

The trial court did not hold an evidentiary hearing on Winters' RCr 11.42 motion, and therefore, "[w]e have no way to determine from the record whether counsel's decision 'was trial strategy, or an "abdication of advocacy."'" *Haley*, 586 S.W.3d at 751 (quoting *Hodge v. Commonwealth*, 68 S.W.3d 338, 345 (Ky. 2001)). However, our Supreme Court has held that an evidentiary hearing is unnecessary when the appellant cannot show prejudice as required by *Strickland*: "Where the record is clear that an ineffective assistance of counsel claim would ultimately fail the prejudice prong of *Strickland*, regardless of the outcome of a hearing on the deficiency prong, the trial court should be affirmed even in the absence of such a hearing." *Id.* (citing *Commonwealth v. Searight*, 423 S.W.3d 226, 231 (Ky. 2014)).

Here, the trial court held that Winters failed to show that he suffered prejudice to the extent of undermining the outcome of trial, observing that Talbert's testimony was not the sole evidence of Winters' guilt regarding the first robbery. The trial court detailed other evidence connecting Winters to the incident, including but not limited to cell phone records placing Winters' phone in the subject area and Winters' corresponding statement to the police that his phone remained in his possession on the day of the crime; another witness' testimony that the suspects spoke with Southern accents and Winters is from Mississippi; and evidence that Winters sent and received text messages related to the home

invasion.  The court also pointed to evidence of Winters' attempt to flee Kentucky after the robbery, citing the common-law rule that evidence of flight is indicative of guilt.  *See Rodriguez v. Commonwealth*, 107 S.W.3d 215, 219 (Ky. 2003).

Given the other evidence linking Winters to the crime, we cannot say that trial counsel's failure to retain an expert on eyewitness identification rendered Winters' trial fundamentally unfair or the result thereof unreliable.  "Based on the foregoing, we cannot conclude that there was 'a reasonable probability that . . . the result of the proceeding would have been different' or that 'a probability sufficient to undermine confidence in the outcome' of this case existed."  *Haley*, 586 S.W.3d at 752 (alterations in original) (quoting *Teague*, 428 S.W.3d at 633).

## C. Trial Counsel's Failure to Object to the Introduction of Photo Lineups Associated with the Hibbett Sports Robberies

Winters next claims that his trial counsel was ineffective for failing to object at trial to the Commonwealth's introduction of photo lineups compiled in connection with the robberies occurring at Hibbett Sports stores.  The lineups contained photos of both men, and after viewing the photo array, eyewitnesses positively identified the co-defendant for his involvement but did not implicate Winters.  Accordingly, Winters was not charged in connection with these robberies, and the related counts of the indictment pertained solely to his co-defendant.

Prior to trial, Winters' counsel moved to sever his charges from those of his co-defendant. The trial court denied that motion, and the Kentucky Supreme Court affirmed that denial on Winters' direct appeal. *Winters*, 2022 WL 574976, at *1. Winters now claims that he was prejudiced by counsel's failure to object to the introduction of the lineups, thus permitting the jury to view his photo during the Commonwealth's presentation of evidence against the co-defendant and in relation to charges he did not face.

As noted by the trial court, the success of an ineffective assistance of counsel claim based on counsel's failure to object hinges on showing that the proffered objection should have been sustained. *See Bratcher v. Commonwealth*, 406 S.W.3d 865, 870 (Ky. App. 2012) (citing *Commonwealth v. Davis*, 14 S.W.3d 9, 11 (Ky. 1999)) ("In evaluating counsel's failure to object, we are mindful that counsel is not required to make useless objections and failure to do so is not ineffective assistance of counsel."). By affirming the trial court's denial of Winters' motion to sever, our Supreme Court foreclosed any relief based on this claim: "[T]he trial court rul[ed] that the robberies were similar acts or transactions and the jury would not be overcome with prejudice by the inclusion of some robberies for which Winters was not charged, but his co-defendant was. RCr 6.20 clearly allows for this." *Winters*, 2022 WL 574976, at *2. The failure to object to evidence that was clearly relevant and admissible against his co-defendant cannot

-10-

amount to deficient performance. *See Williams v. Commonwealth*, 336 S.W.3d 42, 47 (Ky. 2011) ("An attorney cannot be ineffective for failing to raise a non-meritorious claim.").

Moreover, given our Supreme Court's opinion in *Winters*, the ability to satisfy *Strickland*'s second prong is relegated to the same fate: "The failure of Winters to show where actual, undue prejudice occurred leads to the sound conclusion that it did not occur." *Winters*, 2022 WL 574976, at \*3. The trial court did not err when it denied RCr 11.42 relief on this issue.

**D. Trial Counsel's Failure to Move for a Directed Verdict on Assault 1st**

In his third claim of ineffectiveness, Winters centers his argument on trial counsel's failure to move for a directed verdict on the charge of first-degree assault. As noted by both the trial court and Commonwealth, this claim is refuted by the record in that counsel did in fact move for a directed verdict on the very grounds Winters proffers on appeal. In its order, the trial court observed that counsel made a motion for a directed verdict on the first-degree assault charge at the close of the Commonwealth's evidence, renewed this motion at the close of the defense's evidence, and moved for judgment notwithstanding the verdict after the jury returned its verdict. All were denied by the trial court. Again, the trial court did not err in denying RCr 11.42 relief on this claim.

### E. Trial Counsel's Failure to Object to the Sufficiency of Evidence Regarding Jury Instruction No. 10(A)

Winters' fourth contention of ineffective assistance of counsel is based on counsel's failure to object to the sufficiency of evidence supporting the jury instruction provided for the first-degree assault charge. Winters argues that the Commonwealth produced insufficient evidence for him to be held responsible for shooting at and inflicting serious physical injury upon the gas station employee during the Marathon robbery. Winters purports that no eyewitness identified him, and his supposed appearance on the surveillance video is supported only by circumstantial evidence, *i.e.*, his possession of a similar sweatshirt worn by one of the suspects. Winters also compares the ballistics evidence regarding the two retrieved handguns to argue that it is more likely that the co-defendant shot the victim. But for counsel's failure to object to the jury instruction, Winters claims that the trial outcome and sentence would have been different.

In denying relief on this claim, the trial court observed that Winters did not object to the actual wording of the instruction, which outlined the basic elements of first-degree assault, but only that there was insufficient evidence to find him guilty beyond a reasonable doubt. The court cited to *Taylor v. Commonwealth*, for the tenet that "it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions

applicable to every state of the case deducible or supported to any extent by the testimony." 995 S.W.2d 355, 360 (Ky. 1999) (citations omitted). Concluding that the instruction was supported by the evidence, the trial court observed that surveillance video from the Marathon robbery showed two men shot at the victim, and one of the shooters wore distinctive shoes like those worn by Winters in a photo retrieved from his cell phone. Additionally, one of the eyewitnesses gave a general description of one of the suspects that matched Winters, *i.e.*, "a 5'8" light skinned male with a slim build." Regarding the ballistics evidence, the court acknowledged that testing did not confirm use of the .40 S&W in the Marathon robbery but also observed, as did the Kentucky Supreme Court, that testing did not exclude it. Finally, the court detailed other circumstantial evidence connecting Winters to the Marathon robbery, including cell phone data and possession of similar clothing. Certainly, the evidence was merely circumstantial, but that is all the law requires to support an instruction. The alleged insufficiency of admissible evidence is not a valid basis upon which to object to an otherwise proper jury instruction.

As with the claimed error to object to the photo lineup, Winters fails to establish that counsel's performance was deficient in this regard, and the trial court did not err in denying Winters relief on this claim.

**F.  Trial Court's Failure to Hold an Evidentiary Hearing**

The trial court concluded that there was no issue of material fact that could not be resolved by the record.  Regarding the presentation of expert testimony, we agree with the trial court's ruling that Winters failed to meet the prejudice prong of the *Strickland* standard.  *See Searight*, 423 S.W.3d at 231.  As to Winters' remaining claims of ineffective assistance of counsel, we agree that those issues were definitively refuted by the record.

### III. CONCLUSION

Accordingly, we AFFIRM the judgment of the Fayette Circuit Court denying relief under RCr 11.42.

ALL CONCUR.

BRIEF FOR APPELLANT:

Tahjee Winters, *pro se*
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky